**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| **CATHERINE JAMES** | * | |
| 5632 Loch Raven Boulevard | * | |
| Apt. C | * | |
| Baltimore, MD 21239 | * | |
| | * | |
| *Plaintiff* | * | |
| | * | **CASE NO.: 1:20-cv-371** |
| **v.** | * | |
| | * | **CLASS ACTION** |
| **SEED CONSULTING, LLC** | * | |
| **D/B/A SEED CAPITAL CORP.** | * | |
| 1707 Village Center Circle | * | |
| Suite 200-250 | * | |
| Las Vegas, NV 89134 | * | |
| | * | |
| **SERVE ON:** | * | |
| **RESIDENT AGENT** | * | |
| Marquis Aurbach Coffing | * | |
| 10001 Park Run Drive | * | |
| Las Vegas, NV 89145 | * | |
| | * | |
| *Defendant* | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**CLASS ACTION COMPLAINT
AND
DEMAND FOR JURY TRIAL**

Plaintiff, Catherine James, an individual, on behalf herself and all others similarly situated, by and through the undersigned counsel, hereby files this Class Action Complaint against Seed Consulting, LLC, doing business as "Seed Capital Corp.," and states as follows:

## **INTRODUCTION**

1. This is an action for actual damages for violations of the Maryland Credit Services Business Act, Md. Code Ann., Com. Law § 14-1901, *et seq.* ("MCSBA"); 15 U.S.C. §1679, *et sequi*, known more commonly as the "Federal Credit Repair Organizations Act" ("CROA"),  the Maryland Consumer Protection Act, Md. Code Ann., Com. Law, § 13-101, *et seq.*, ("MCPA"), unjust enrichment, and declaratory and injunctive relief.

2. The transaction that is the subject of this dispute involves a contract to assist consumers in obtaining credit.

3. Maryland and federal law place various restrictions on those who purport to assist consumers in obtaining credit.

4. These restrictions include certain state licensing, bonding and, most importantly, disclosure requirements.

5. These requirements are set forth in the MCSBA.

6. Under the rubric "credit services business," the MCSBA applies to those who offer, in return for compensation, to assist consumers to obtain "an extension of credit for a consumer, or providing advice or assistance to a consumer with regard to obtaining an extension of credit."

7. An "extension of credit" under the MCSBA is any "right to defer payment of debt, offered or granted primarily for personal, family, or household purposes."

8. As described more fully below, at all times relevant to this dispute, an unlicensed credit services business called Seed Capital held itself out to be a consulting service that contracts with individuals in Maryland to obtain lines of consumer credit.

9. In order to obtain the trust of its clients, Seed Capital advised consumers that their credit score would experience a "profound increase" one year after using their service. Seed Capital also applied for credit using false, projected incomes and advised consumers that it could manipulate the potential creditors' access to their credit reports to minimize the impact of hard inquiries.

10. Once Seed Capital opened the lines of consumer credit, it used one of the newly established lines to pay itself a hefty credit service fee.  After taking its fee, Seed Capital considered its performance under the consumer credit contract to be complete.

11. James is a Maryland consumer who entered into a contract with Seed Capital to obtain funding for a for-profit real estate training program. Seed Capital induced her to use its credit services, which amounted to nothing more than multiple applications for personal credit.

12. Seed Capital provided consumers with false credit advice in violation of federal credit repair assistance laws.

13. The conduct of Seed Capital constitutes a violation of the MCPA, which results in the unjust enrichment of Seed Capital, and further entitles the Plaintiff

and the class she seeks to represent to restitution and an award of a reasonable attorney's fee.

14. By way of this lawsuit, James seeks recovery for herself and the class she seeks to represent for the Defendant's numerous violations of state and federal consumer protection statutes, injunctive relief, unjust enrichment, and for other relieve as this Court sees fit.

## PARTIES

15. At all times relevant hereto, Plaintiff, Catherine James ("James"), an individual, was a consumer and resident of Baltimore City, Maryland. Ms. James hired the Defendant to perform credit services that are the subject of this dispute.

16. At all times relevant hereto, Seed Consulting, LLC was a corporation doing business as Seed Capital Corp. ("Seed Capital") and registered under the laws of Nevada. At all times material hereto, Seed Capital was engaged in the business of assisting consumers in obtaining extensions of credit in the State of Maryland.

## JURISDICTION AND VENUE

17. The jurisdiction of this Court is established pursuant to 15 U.S.C. §1679, *et sequi*, known more commonly as the "Federal Credit Repair Organizations Act" ("CROA") and with respect to state law claims pursuant to the pendent jurisdiction of this Court pursuant to 28 U.S.C. §1367.

18. This Court has jurisdiction over the Defendant, who conducted business in Maryland, and venue in this Court is proper as the acts complained of occurred in this state.

## FACTUAL ALLEGATIONS

19. In early January of 2018, Ms. James first learned of a job training opportunity called the "National Real Estate Network" ("NREN") when her then-significant other, Michael Brown, heard a radio advertisement for NREN's training program.

20. Upon information and belief, NREN was a for-profit educational program that provided real estate workshops and training materials on real estate sales and investing in Baltimore and nationwide.

21. According to the NREN materials, the goal of the program was to "make our students into "Investment-Superstar" [*sic*].

22. In exchange for an initial payment of $1,000.00, students could attend a three-day introductory course, and were promised that "wealth, success, and great opportunities" were waiting in the near future.

23. On or about January 25, 2018, James and Brown signed up to attend the in-person course.

24. From February 9th through February 11th, James attended the introductory training from nine o'clock in the morning until six o'clock at night at the Baltimore Marriott Inner Harbor, 110 S. Eutaw Street, Baltimore, MD 21201.

25. At the training, students were invited to attend a second opportunity through NREN, called "Nick Vertucci's Fortunes in Flipping VIP Bus Tour," which was part of the "Nick Vertucci Real Estate Academy."

26. If students purchased the packages on-site at the training, they were offered a $10,000 discount.

27. On February 11, 2018, James was offered the "Elite Business Package," which included a 4-Day VIP Flipping Bus Tour, Student Facebook Forum, Online Elite Real Estate Investing Tutorial, Real Estate Evaluation Software, Flipper & Cash Flow Analyzer Software Bundle, Corporate Structure/Entities, and Real Estate Hotline, as well as a 4-Week Advanced Wholesale Training. The total price for this package, after the discount, was $29,997.00.

28. On February 11, 2018, when James did not have the funds necessary to purchase the training package, a representative from NREN steered her towards another representative in the room named "Tanya Domino" from Seed Capital. The representative from NREN assured James that Seed Capital would work with her to provide all of the financing she needed for the Elite Business Package.

29. On February 11, 2018, Ms. Domino provided James with a Business Consulting Services Agreement and supporting documentation from Seed Capital, collectively "Agreement." A copy of the "Agreement" is attached as **Exhibit A**.

30. In the Agreement, Seed Capital stated that it would charge James a service fee of $3,495.00.

31. The "Scope and Services" provision of the Agreement stated as follows:

> Client retains and hires Consultant to provide consulting services and assistance related to establishing financial and credit accounts of behalf of Client and Client's business (the "Services"), including credit cards, lines-of-credit, bank loans or other similar financial accounts (each an "Account" and collectively, "Accounts") with lenders and

other financial service providers (each, a "Lender"). At consultant's discretion and at any time after the Effective Date, Consultant may evaluate the creditworthiness of Client by obtaining a credit report or other background information about Client or Client's business from appropriate sources. Client hereby authorizes Consultant to obtain such information.

*See* Exhibit A.

32. The third page provided with the Agreement is entitled, "Seed Program Highlights." This document specifically referred to "students." Upon information and belief, the students referred to by the Agreement were the NREN program "students."

33. The Highlights page also explained that no income documentation was required.

34. At the time that James entered into a contract with Seed Capital, she did not own a business and sought to attend the Nick Vertucci Real Estate Academy.

35. The Highlights page also confirmed that the Seed Capital fee was $3,495.

36. The last page of the Agreement listed "Program Do's and Don'ts" and contained a list of credit advice.

37. On February 11, 2018, James entered into the Agreement, which was signed and notarized by Ms. Domino.

38. After entering into the Agreement, James learned that Seed Capital decided that her projected income was $105,000.  In fact, James earned $13.50 per hour in an administrative job.

39. On March 12, 2018, James was growing increasingly concerned about how the Seed Capital program worked, and asked Seed Capital via email whether the lines of credit would reflect as a hard hit on her credit report.

40. On March 13, 2018, a representative from Seed Capital named Mariah Eisler ("Eisler") advised James via email that she was going to "lock one or two of her credit bureaus," which would allow creditors to only perform credit pulls on one bureau and avoid multiple hard pulls. She further advised that all of the inquiries would fall of James' credit report in ninety days.

41. In response, on March 13, 2018, James emailed Eisler and stated that she did not understand the benefit of using Seed Capital. James advised that she received credit card offers in the mail almost every day and did not understand the difference between completing the applications on her own and having them done for her.

42. In response, on March 13, 2018, Eisler provided a lengthy email on the benefits of using Seed Capital. She advised James that by using Seed Capital, she could expect a "profound increase" in her credit score, "anywhere from 50-100 points." She should also "expect to be granted credit (of any kind) at the very best terms."

43. James relied on Eisler's statements and credit advice, and was assured about her decision to use Seed Capital.

44. On March 23, 2018, Eisler advised James via email that Seed Capital opened eight credit cards totaling $44,500 in credit lines. The cards opened and respective limits were:

     a. Barclays NFL Extra Points - $5,000
     b. Citi Diamond Preferred - $4,600
     c. Citi Simplicity 18 - $7,900
     d. Discover IT NHL - $2,000
     e. Fred Meyer Visa (U.S. Bank) - $3,000
     f. Stand Up to Cancer (Fifth Third Bank) - $9,500
     g. Wells Fargo Rewards Card - $8,500
     h. Chase Freedom Unlimited - $4,000

45. All of the credit cards were opened in James' individual name. They were granted primarily for personal, family, or household purposes.

46. Eisler then advised James not to use the credit lines until further notice.

47. On March 29, 2018, Eisler advised James via email that the Seed Capital Service Fee of $3,495 was charged to her Chase Freedom Unlimited Card.

48. On April 8, 2018, Eisler emailed James and advised that Seed Capital's work was complete.

49. James received the abovementioned consumer credit cards in the mail, with no restrictions on their use.

50. James proceeded to use them to cover her real estate training, but her credit score rapidly fell from both the hard inquiries and the multiple lines of credit use.

51. Almost immediately after using the cards, James began owing significant monthly payments on the credit cards. At their height, James was paying $1,400

per month in minimum payments to the creditors that Seed Capital arranged for her to use.

52. This monthly payment became too high for James to bear, which led her to default on multiple cards, incur charge-offs, and be sued by creditors in the Maryland district courts.

53. At trial on January 14, 2020 in *Wells Fargo v. James*, Case Number 010100057842019 in the District Court for Baltimore City, Judge Aldouby heard evidence that Seed Capital was an unlicensed credit services business and determined that James was a victim of fraudulent activity.

54. Upon information and belief, by opening small lines of credit and encouraging consumers like James to use them, Seed Capital nearly guaranteed that credit scores would drop due to high debt-to-credit ratios.

55. At all times relevant to this dispute, James did not receive any of benefits to her credit score that Seed Capital had promised.

56. James suffered damages as a result of the Seed Capital Agreement.

57. In addition to paying the high credit service fee, James incurred negative information on her credit report.

58. Through the misconduct of Seed Capital, James was placed in a financially worse position than if she had not utilized Seed Capital's services.

59. Pursuant to Md. Code Ann, Com. Law § 14-1901(e), a "credit services business" under Maryland law is defined as "any person who, with respect to the extension of credit by others, sells, provides, or performs, or represents that such

person can or will sell, provide, or perform, any of the following services in return for the payment of money or other valuable consideration: (i) Improving a consumer's credit record history, or rating or establishing a new credit file or record; (ii) Obtaining an extension of credit for a consumer; or (iii) Providing advice or assistance to a consumer with regard to either subparagraph (i) or (ii) of this paragraph."

60. An "extension of credit" as related to a credit services business "means the right to defer payment of debt or to incur debt and defer its payment, offered or granted primarily for personal, family, or household purposes." Md. Code Ann., Com. Law § 14-1901(f).

61. Seed Capital acted as a credit service business in its actions with James as described above.

62. Maryland law provides that "notwithstanding any election of law or designation of situs in any contract, [...] [a] credit services business is required to be licensed." Md. Code Ann. Com. Law § 14-1903.

63. Seed Capital did not obtain a license to act as a credit service business in Maryland.

64. A credit services business must also give a consumer to whom it is providing services, a written statement which will detail the services provided, their right to certain required information for the consumer, and the total fees to be charged to the consumers before the credit services business actually performs any services on the consumer's behalf.  Md. Code Ann., Com. Law § 14-1904 & 14-1905.

65. The Agreement did not meet the requirements described above.

66. A credit services business must also provide a consumer a written right to cancel the contract for credit services it establishes with a consumer in a specific form. Md. Code Ann., Com. Law §14-1906.

67. Seed Capital failed to provide James with the required right to cancel described above.

68. The actions described above by Seed Capital were willful and knowing.  Seed Capital is a sophisticated, nationwide business, which has knowledge of the various state laws that govern credit services.

69. By failing to provide consumers with written statements that detailed services performed and actual fees, Seed Capital illegally withheld information that Maryland consumers needed to make fully informed decisions.

70. Under the MCSBA, "any contract for services from a credit services business that does not comply with the applicable provisions of this subtitle shall be void and unenforceable as contrary to the public policy of this State."  Md. Code Ann., Com. Law § 14-1907.

71. A credit services business that willfully fails to comply with any requirement imposed by the Maryland Credit Services Businesses Act, "is liable to the consumer in an amount equal to the sum of: (1) Any actual damages sustained by the consumer as a result of the failure; (2) A monetary award equal to 3 times the total amount collected from the consumer, as ordered by the Commissioner; (3) Such amount of punitive damages as the court may allow; and (4) In the case of any

successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." Md. Code Ann., Com. Law § 14-1912(a).

72. A credit services business which negligently fails to comply with any requirement imposed by the Maryland Credit Services Businesses Act, in failing to comply with any requirement imposed under the law "with respect to any consumer is liable to that consumer in an amount equal to the sum of (1) Any actual damages sustained by the consumer as a result of the failure; and (2) In the case of any successful action to enforce any liability under this section, the cost of the action together with reasonable attorney's fees as determined by the court." Md. Code Ann., Com. Law §14-1912(b).

73. "Each sale of the services of a credit services business that violates any provision of [the Maryland Credit Services Businesses Act] is [also] an unfair or deceptive trade practice under Title 13 of this article." Md. Code Ann., Com. Law §14-1914.

74. By information and belief, during the three-year period preceding the filing of the instant action, Seed Capital has acted as a credit service business for hundreds, if not thousands, of Maryland consumers such as James, without complying with the requirements of the MCSBA.

75. By information and belief, Seed Capital has collected hundreds of thousands of dollars in unlawful fees from Maryland consumers without complying with the requirements of the MCSBA.

76. The non-economic intangible damages of James include, but are not limited to, personal humiliation, exasperation, fear and apprehension, embarrassment, depression, outrage, mental anguish, emotional distress with a physical manifestation, sleeplessness, changes in mood and appetite, anger, physical and mental pain and suffering.

## **CLASS REPRESENTATION ALLEGATIONS**

77. The Plaintiff brings this action on behalf of herself and a class of all other persons similarly situated, as a representative member of the following class:

> All Maryland residents, who in the three (3) years preceding the filing of the instant action, entered into a contract with Seed Capital to arrange an extension of credit or to whom Seed Capital provided advice, as to such persons, to obtain an extension of credit.

78. **Numerosity of the Classes.**   The prospective class members are estimated to number at least 100 and are so numerous that joinder of all members would be impractical.

79. The exact size of the proposed class and identity of the members thereof are readily ascertainable from Seed Capital's business records.

80. **Existence of Common Questions of Law and Fact.**   There are questions of law and fact common to the Class, which common issues predominate over any issues involving owing individual class members.  These include, but are not limited to:

> a. Whether Seed Capital is a credit services business as defined under the MCSBA.

b. Whether Seed Capital failed to provide consumers with mandatory written disclosures under the MCSBA.

c. Whether Seed Capital entered into agreements for the extension of consumer credit with Maryland consumers that are void as a matter of law.

d. Whether Seed Capital collected profits from void and unenforceable contracts.

e. Whether Seed Capital is a credit repair organization under CROA.

f. Whether Seed Capital failed to provide disclosures required under CROA.

g. Whether the Plaintiff and members of the Class have been subjected or may be subjected to collection and credit reporting activities, as described above.

81. **<u>Typicality of Claims.</u>**   James' claims are typical of those of the class members.  All are based on the same facts and legal theories.

82. **<u>Adequacy of Representation.</u>**   Catherine James will fairly and adequately protect and represent the interest of each class member.  The Plaintiff's interests are not antagonistic to those of the other members of the Class.  The Plaintiff has retained counsel experienced in handling class actions and actions involving unlawful commercial practices.  Neither the Plaintiff nor her counsel have any interest which might prevent them from actively and vigorously pursuing

this action.  The Plaintiff has no conflicts of interest that would interfere with her ability to represent the interests of the members of the Class.

83. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

(1).　　The questions of law or fact common to the members of the class predominate over any questions affecting an individual member, and

(2).　　A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

84. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

85. James requests certification of a hybrid class of Rule 23(b)(3) for monetary damages and Rule 23(b)(2) for equitable relief. There are no difficulties likely to be encountered by the Court in the management of this proposed class action.

86. The Class Representative's counsel is entitled to a reasonable fee from the class members or from a common fund for the handling of this action.

**COUNT ONE**
**VIOLATIONS OF THE MD. CREDIT SERVICES BUSINESSES ACT**
**MD. CODE ANN., COM. LAW § 14-1901 *et. seq.***

87. The Class Representative incorporates by reference the foregoing allegations of this Complaint.

88. Seed Capital engaged in the business of a credit service business in Maryland and is subject to the MCSBA.

89. Seed Capital was not licensed to perform credit services businesses.

90. Seed Capital violated the rights of the Class Representative and the class members by failing to provide the disclosures and contracts statutorily mandated under the MCSBA.

91. As a direct and proximate result of Seed Capital's unlawful conduct described above, the Class Representative and class members have been damaged and have suffered economic losses in an amount to be proven at trial.

92. The Class Representative and class members are entitled to actual and statutory damages as well as injunctive relief.

## COUNT TWO
### VIOLATIONS OF THE FEDERAL CREDIT REPAIR ORGANIZATIONS ACT
### 15 U.S.C. §1679, *et seq.*

93. The Class Representative incorporates by reference the foregoing allegations of this Complaint.

94. At all times material hereto, James was a "consumer" as said term is defined under 15 U.S.C. §1679a(1).

95. At all times material hereto, Defendant was a "credit repair organization" as said term is defined under 15 U.S.C. §1679a(3).

96. At all times material hereto, Defendant was a person who used any instrumentality, interstate commerce or the mail to sell, provide or perform (or

represents that such person can or will sell, provide or perform) any service in return for the payment of money or the value of consideration for the express or implied purpose of:

    (a)    improving the credit, credit history or credit rating of a consumer; or

    (b)    providing advice or assistance to consumers with regard to any activity or service which includes the credit record, credit history and credit rating of the consumer.

97. The Defendant violated the provisions of 15 U.S.C. §1679c in that Defendant did not provide a prior written statement advising James and members of the class of their rights as consumers under state and federal law prior to the execution of the Agreement.

98. The Defendant violated the provisions of 15 U.S.C. §1679e in failing to provide the required cancellation form.

99. The Defendant violated the provisions of 15 U.S.C. §1679d in that the Defendant did not obtain from James or consumers a written and dated contract with the terms and provisions required in said subsection of CROA.

100. As a direct and proximate result of the violation of CROA by the Defendants, James has been damaged.

101. Pursuant to 15 U.S.C. §1679g(a)(1), James is entitled to recover the amount of any actual damages sustained by James and the class she seeks to represent or the amounts paid by James and the class she seeks to represent to the Defendant as a credit repair organization.

102. Pursuant to 15 U.S.C. §1679g(a)(2), James and the class she seeks to represent are entitled to punitive damages in an amount as the Court may allow.

103. Pursuant to 15 U.S.C. §1679g, James and the class she seeks to represent are entitled to recover reasonable attorney's fees in the bringing of the instant action.

104. James has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

### COUNT THREE
### VIOLATIONS OF THE MD. CONSUMER PROTECTION ACT
### Md. Code Ann., Com. Law § 13-101, *et seq.*

105. The Class Representative incorporates by reference the foregoing allegations of this Complaint.

106. Plaintiff is a "consumer" within the meaning of the Maryland Consumer Protection Act ("MCPA"), Com. Law § 13-101(c).

107. Plaintiff incurred all debts subject to this dispute primarily for personal, family, or household purposes.

108. The Defendant is subject to all of the consumer protections mandated by the CPA which, among other things, prohibits unfair or deceptive practices in the extension of consumer credit and in the collection of consumer debts.  MCPA, Com. Law §§ 13-303(c) and (d).

109. Defendant made misleading written statements in the contracts for credit services.

110. Defendant made misleading written statements in the Agreement.

111. Plaintiff relied on the Defendant's statements when entering into the Agreement.

112. A violation of the MCSBA is a *per se* violation of the MCPA.

113. Defendant caused actual damages to the Plaintiff and the class she seeks to represent.

## COUNT FOUR
### DECLARATORY AND INJUNCTIVE RELIEF

114. The Class Representative realleges and reaffirms the allegations contained above as if set forth hereat in full.

115. This claim for declaratory relief is brought under the Federal Declaratory Judgment Act to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the credit services contracts of the Class Representative and members of the class and the consumer protections embodied in the MCSBA.

116. Seed Capital maintains that it may operate a business of obtaining extensions of credit for consumers and providing advice or assistance to consumers with respect to obtaining an extension of credit for consumers without complying with the requirements of the MCSBA and CROA.  As such, consumers will not receive the protections and benefits of Maryland law until this Court declares and affirms that Seed Capital must comply with the requirements of the MCSBA and CROA.

117. Based on information and belief, there is an actual, judicable controversy between the parties relating to the construction of the Credit Services Contract of the Class Representative and members of the Class and the application of the MCSBA and CROA to those contracts.

118. The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing Seed Capital from violating the statutory and common law.

119. The Class Representative and other members of the Class are likely to succeed on the merits of this action, as the MCSBA explicitly requires that Seed Capital be licensed, and MCSBA and CROA require that it provide specific disclosures to consumers for whom it provided services.

### COUNT FIVE
#### UNJUST ENRICHMENT

120. The Plaintiff incorporates by reference the foregoing allegations of this Complaint.

121. James has conferred a benefit on the Defendant by paying for services offered by the Defendant.

122. The Defendant has knowledge of the benefit conferred by James.

123. The Defendant has accepted and/or retained the benefit conferred by James.

124. The circumstances are such that it would be inequitable for the Defendant to retain the benefits without paying the fair value thereof.

125. The Defendant has been unjustly enriched by the retention of the benefits paid by James.

## PRAYER FOR RELIEF

WHEREFORE, Catherine James, an individual, prays for relief on behalf of herself and all others similarly situated:

A.      For an Order certifying the instant matter as a class action;

B.      For a declaratory judgment establishing that Seed Capital may not continue operating as a credit service business without complying with the requirements of Maryland law, and that Seed Capital may not continue operating as a credit repair organization without complying with the requirements of federal law;

C.      For compensatory damages as a result of Seed Capital's direct and indirect, unfair or deceptive and unlawful practices as described herein pursuant to Md. Code Ann., Com. Law §§13-408 & 14-1912;

D.      For punitive damages, for Seed Capital's willful violations of Maryland law, as the Court may allow pursuant to Md. Code Ann., Com. Law §14-1912;

E.      For reasonable attorney's fees and costs pursuant to Md. Code Ann. Com. Law §§13-1408 & 14-1912; and 15 U.S.C. §1679g.

F.      For such other and further relief as the Court deems just and proper.

## CLAIM FOR ATTORNEY'S FEES ALLOWED BY LAW

126. Plaintiff includes this separately numbered claim for attorney's fees in this initial pleading.  Plaintiff advises the court and the Defendant that they believe that

this case is likely to result in a substantial claim for attorneys' fees for services over a significant period of time.

## REQUEST FOR A TRIAL BY JURY

Plaintiff, Catherine James, individually, and on behalf of all others similarly situated, pursuant to Rule 38(b), Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

Dated: February 11, 2020               Respectfully Submitted,

/s/*Kathleen P. Hyland*
Kathleen P. Hyland (Bar No. 30075)
HYLAND LAW FIRM, LLC
16 E Lombard Street, Suite 400
Baltimore, MD 21202
(410) 777-5396 (Tel.)
(410) 777-8237 (Fax)
kat@lawhyland.com

*Attorney for Plaintiff*